IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARIA ELIDA VILLASENOR-DIAZ,

        Plaintiff,

v.                        Case No. 12-1171-SAC

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security which denied plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence in the record as a whole, and whether the

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). When supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). But the standard "does not allow a court to displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Trimmer v. Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999).

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that he has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do her previous work. The claimant is determined not to be disabled unless she shows she cannot perform her previous work. The fifth step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20 (2003).

## II. History of the case

Plaintiff, a thirty-three-year-old woman with an eleventh grade education, filed applications for disability insurance benefits and SSI based primarily on degenerative disc disease of the cervical spine, headaches, obesity, and anxiety. At step one, the administrative law judge (ALJ) found that plaintiff had not engaged in substantial gainful activity since November 15, 2002, the alleged onset date. The ALJ found at step two that the plaintiff has severe impairments of degenerative disc disease of the cervical spine, headaches, obesity, and anxiety, but found at step three that those impairments are not on the list of impairments presumed severe enough to render one disabled.

Accordingly, the ALJ determined plaintiff's residual functional capacity (RFC) to perform sedentary work and found that she could do various physical tasks, with the following limitations:

> the plaintiff can only occasionally climb, balance, stoop, kneel, crouch, or crawl; cannot climb ladders, ropes, or scaffolds; can only occasionally perform reaching in all directions, including overhead; can have no concentrated exposure to temperature extremes or vibrations; and is limited to simple unskilled work with only occasional contact with the general public.

Tr. 19. The ALJ found the plaintiff unable to perform her past relevant work, but found her able to perform jobs that exist in significant numbers in the national economy, so determined she is not disabled. Tr. 24-25.

## III. The ALJ's Evaluation of Plaintiff's Credibility

Plaintiff contends that the agency ignored uncontroverted medical evidence in determining her RFC, failed to apply the correct legal standard in determining her credibility, and made selective extrapolations from the record.

When a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. The ALJ found plaintiff's testimony not credible to the extent it indicated she was totally disabled from working. That finding is due some deference by this court.

> Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.

*Hackett,* 395 F.3d at 1173 (citation, brackets, and internal quotation marks omitted).

Plaintiff contends that the ALJ failed to comply with the requirements of Social Security Ruling (SSR) 96-7p when evaluating the credibility of plaintiff's subjective complaints for purposes of determining her RFC because he did not consider the following factors prescribed by that ruling: 1) factors that precipitate and aggravate the symptoms; 2) the type, dosage,

5

effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; and 3) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms.

But the ALJ is not required to provide a factor-by-factor analysis. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The ALJ did not simply recite the general factors he considered; he also stated specific reasons for his finding on credibility, supported by the evidence in the record, as noted below. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

**A. Employment Inconsistencies**

The ALJ first noted that plaintiff had worked full-time after the date she originally alleged she was disabled, demonstrating that her symptoms were not debilitating. Tr. 19. Evidence of employment while allegedly disabled is probative of a claimant's ability to work. *See Bates v. Barnhart*, 222 F. Supp. 2d 1252, 1260 (D. Kan. 2002).

The ALJ also contrasted plaintiff's assertion that she had to "continually reduce her schedule at [Contract America] and eventually leave due to pain," with Contract America's lack of knowledge that plaintiff had any disability, "suggesting there may have been other reasons for the claimant's decreased schedule and departure." Tr. 19. A claimant's departure from work for reasons other than a medical condition is a

significant factor for the ALJ's consideration. *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990).

Plaintiff contends the ALJ erred in not considering that she worked only a few months for each employer, received medical treatment during those months, and had "excessive absences" from work which she suggests were due to her medical condition. But the record reflects the ALJ's knowledge of the exact dates of Plaintiff's employment (Tr. 14), and does not reflect either employer's knowledge that plaintiff alleged or had any medical condition, or received any medical treatment, or incurred any absence for medical reasons. Rather, plaintiff's employer indicated that she had no problem performing the tasks necessary to the job, and that she did not require any special consideration or modification of duties due to any impairment (Tr. 19, 217).

**B. Inaccurate Reporting to Medical Providers**

The ALJ also noted that in 2009, plaintiff told her mental health provider she had last worked in 2003, when in fact she had worked periodically from 2006 to 2008. This led the ALJ to conclude that the claimant was "not always accurately reporting information to her medical providers." Tr. 20. Plaintiff challenges this finding because the ALJ "fail[ed] to discuss the provider's accurate history of the type of work Plaintiff performed. (R731)." Dk. 11, p. 16. But the fact that plaintiff accurately reported the nature of her work fails to detract from the ALJ's finding,

7

supported by the record, that the Plaintiff inaccurately reported the dates she had worked, or from the ALJ's ensuing conclusion that plaintiff was "not always accurately reporting information to her medical providers." The ALJ properly found that plaintiff's statement detracted from her credibility. *See generally Brown v. Bowen*, 801 F.2d 361, 363 (10th Cir. 1986).

**C. Inconsistent Information - Limitations and Symptoms**

The ALJ next found that plaintiff had reported inconsistent information regarding her limitations and symptoms. To support that conclusion, the ALJ noted multiple examples in the record:

> The claimant advised the consultative examiner that she does very little walking due to her neck pain and related symptoms (Exhibit 11F, p. 3). The claimant also informed him that her husband and family do all the shopping, as she is unable to do so (Exhibit 11F, p. 3). However, the claimant's function report indicates that she is able to walk her dog, and the claimant reported walking one mile every evening with her husband (Exhibit 6E, p.4; Exhibit 4F,p.6, 11). Additionally, while the claimant's function reports indicate that she does not go shopping alone, they do report that she goes shopping (Exhibit 6E,p.6; Exhibit 16E,p.5). The claimant's niece also reports the claimant is able to go shopping (Exhibit 11E, p.4). Furthermore, while the claimant reported that she is no longer able to go out and play Bingo, in 2009 the claimant was reported to be playing Bingo again due to her decreased anxiety (Exhibit 11F,p.3; Exhibit 28F, p. 10). The claimant also indicated on her June 2009 function report she had difficulty with written instructions but was able to follow spoken instructions (Exhibit 6E, p.8). Then on her September 2009 function report, she indicated the exact opposite (Exhibit 16E, p. 7). In addition, the claimant testified that she sleeps all day, but her brother indicated that she watches television for 5 hours a day with him (Exhibit 4E, p. 1). Furthermore, according to the medical record, the claimant alleged that she was unable to sleep, even with sleeping pills, but she testified that she was able to sleep without pain (Exhibit 2F, p. 7). The claimant also testified and reported to her mental providers that she experienced no improvement with epidural injections (Exhibit 18F, p. 11). However, she subsequently indicated mild improvement

> with the injections (Exhibit 25F, p.1). Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.
> 
> The claimant indicated on her headache questionnaires that she is unable to function from 5 to 7 days a week due to headaches, but the average day she describes in her function reports makes no mention of a headache (Exhibits 5E, 6E, 15E).
> 
> …
> 
> Additional credibility issues are discussed in relation to the claimant's neck impairment, below.
> 
> …
> 
> … The claimant's record suggests some nerve impingement; however, no objective findings are presented in support of this conclusion (Exhibit 17F, p. 12).
> 
> … On February 2, 2008, the claimant underwent an evaluation for physical therapy. At that time, the claimant was reported to have a limited range of motion, muscle weakness, pain, and decreased functional activity (Exhibit 1F, p.2). However, by February 27, 2008, the claimant reported she was feeling great and had discontinued her prescription anti-inflammatory, instead taking only Aleve (Exhibit 1F, p.17-18). Furthermore, the claimant's 2009 records indicate she was taking only Tylenol for a six-month period (Exhibit 4F, p.4). Nevertheless, contrary to the medical record, the claimant testified that physical therapy made her condition worse.

Tr. 21.

Plaintiff dismisses these as "incongruous statements." But these reasons for discounting her credibility were sound. *See* SSR 96-7p (providing that "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."); *Harris v. Astrue*, No. 11–5151, 2012 WL 3893128, *4 (10th Cir. Sept. 10, 2012) (ALJ properly relied on inconsistency between claimant's testimony and matters of record). The nature of plaintiff's daily activities is a legitimate factor for the ALJ to consider when determining the plaintiff's

testimony regarding her limitations. *See Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993). Plaintiff admitted to much more than the sporadic performance of household tasks or work, *compare Thompson, id*, and her routine daily activities are more consistent with the ALJ's conclusion of non-disability than they are with her own claims of disabling limitations.

### D. Third-Party Reports

Plaintiff contends the ALJ did not consider the entirety of the third party statements which would show that she needs rest during the day because of pain and fatigue, and has "limited social activities and limited ability for self-care." (Tr. 195-202, 221-228, 241-246.) The ALJ considered those statements, but gave them "little weight" for three reasons: 1) they are "lay opinions based on casual observation rather than objective medical and testing"; 2) they "do not outweigh the accumulated medical evidence regarding the extent to which the claimant's limitations can reasonably be considered a result of her determinable impairments"; and, 3) "some of the claims contained in these function reports are inconsistent," citing one specific example. Tr. 24. Although the ALJ is not required to make specific written findings regarding third-party testimony so long as the written decision reflects that the ALJ considered that testimony, *Blea v. Barnhart,* 466 F.3d 903, 915 (10th Cir. 2006), the ALJ here made such findings, noting the very factors specifically recommended by SSR 06–03p for evaluating lay opinions. *See* West's Soc. Sec. Reporting Serv., Rulings 333 (Supp. 2012)

(listing "the nature and extent of the relationship," and "whether the evidence is consistent with other evidence").

### E. Failure to Follow Recommended Treatment

The ALJ also found plaintiff was non-compliant with recommended treatment in one respect.

> Additionally, the claimant was advised that she should be compliant with her CPAP machine because sleep deprivation could cause breakthrough headaches, but she continued to be non-compliant, as discussed above (Exhibit 18F, p.10). The claimant's failure to comply with recommended treatment certainly suggests she is not as limited by her headaches as she alleges.

An ALJ can take note of the "extensiveness of the attempts …. to obtain relief" in assessing a claimant's credibility. *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Plaintiff counters that "the ALJ ignores Plaintiff's repeated descriptions of pain interfering with her sleep and of her feeling of suffocation with wearing the mask," but provides no citation to the record and fails to show this would have made any difference in the outcome of the matter.

### F. Plaintiff's Lack of Cooperation in Testing

The ALJ also found that the plaintiff had been "less than cooperative regarding testing of her functional abilities." Tr. 21. He supported this conclusion by reference to two specific examples: 1) a consultative examiner's opinion that the Plaintiff was not cooperative during an examination; and 2) a physical therapist's opinion that Plaintiff was self-limiting her range of motion during a session. Tr. 21.

11

### 1. Consultative Examination

The ALJ did not give full credence to plaintiff's allegations of a limited range of motion based in part on his finding that she had not fully cooperated during a range of motion test by an orthopedic consultative examiner.

> The consultative examiner indicated that the claimant refused to move her neck or arms for examination because she claimed it would cause her severe pain; however, the examiner reported no spasm or guarding on palpation (Exhibit 11F, p.3, 4). Furthermore, the claimant refused to straighten out her legs for a straight leg raising test but was able to passively extend her legs (Exhibit 11F, p.4). Additionally, during a prior examination for physical therapy, the claimant was reported to have abilities that were inconsistent with the claimant's alleged limitations (Exhibit 17F, p.2). The claimant exhibited a full range of motion in the elbow and full cervical flexion during treatment, but when measured she was severely limited in both areas (Exhibit 17F, p. 2). This suggests the claimant may have been deliberately limiting her movements during the examination and measuring in an attempt to skew the results. As a result, the undersigned cannot give full credence to the claimant's allegations of a limited range of motion.

Tr. 21. Evidence indicating that Plaintiff exaggerated her functional limitations serves to undercut her credibility. *See Diaz v. Secty of Health and Human Services*, 898 F.2d 774, 777 (10th Cir. 1990); *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

Plaintiff asserts that the ALJ's view of all the evidence was biased by his heavy and blind reliance on the above-referenced report from the who found the plaintiff uncooperative. But that is mere speculation, not borne out by the ALJ's stated rationale which i supported by the record as noted above. Plaintiff asks the Court to remand for an RFC assessment and to

direct the ALJ to ignore the orthopedic consultant's report. Dk. 11 p. 18. But the ALJ is not at liberty to ignore relevant evidence, especially when that evidence is "significantly probative." *Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir. 1996).

Plaintiff contends the ALJ ignored medical evidence showing that her symptoms were elevated on the day she saw the consultative examiner because she had not taken pain or anti-inflammatory medications for two days, in accordance with instructions relating to her steroid epidural injection she received later that same afternoon. Dk. 11, p. 3. But the ALJ specifically referenced the very page of the report which reflects the orthopedic consultative examiner's knowledge that plaintiff was "due to have a second [epidural steroid injection] some time this afternoon." Exh. 11F, p. 3, 4. The record confirms that plaintiff was ordered to be off certain medications the day of her consultative examination. But given plaintiff's contention that her pain medications were unsuccessful, no inference arises that plaintiff's lack of medication enhanced her pain that day.

### 2. Physical Therapy

As for the ALJ's reliance on the physical therapist's 8/25/09 finding that plaintiff was deliberately limiting her movements, the Plaintiff alleges the ALJ selectively extrapolated from the record. Plaintiff contends that she had "numerous" P.T. sessions after January of 2008 and no other physical therapists opined that she self-limited her range of motion. But the fact that

13

Plaintiff did so on one occasion is supported by the record, as the ALJ found.

The record shows that plaintiff was in physical therapy only for a few months - from 2/4/08 - 2/28/08 and from 12/17/10 - 2/4/11. Notes from plaintiff's physical therapists recognize plaintiff's fluctuating complaints of pain and decreased cervical range of motion, but recommend at discharge nothing more than a home exercise program and walking activity program in 2008, Tr. 297 (noting "I have discussed with her the importance of a weight loss program with diet and exercises,") and an exercise program and referral to a physician in 2011. Tr. 1016. Those records do not show plaintiff to be disabled.

### G. Other Evidence

Plaintiff contends that the ALJ ignored relevant evidence. She alleges that her extensive treatment history would have shown the following: 1) that medical professionals consistently observed muscle tightness and spasm in her cervical spine and shoulders; 2) that she had a long history of treatment for cervical spine pain and headaches which worsened over time, especially since January 2008; and 3) that since January 2008, plaintiff has regularly sought and participated in various treatment modalities, including prescription drugs, steroid injections and physical therapy sessions. Even assuming the truth of this assertion, the plaintiff does not show how this alleged error in the ALJ's decision prejudiced her, as her treatment history does not show her to be disabled. *See Keyes-Zachary v. Astrue*, 695 F.3d

1156 (10th Cir. 2012). The record, however, shows that the ALJ did consider medications plaintiff took and treatment other than medication she received for relief of pain or other symptoms. *See e.g.*, Tr. 20-23 (discussing various medications); Tr. 21 (discussing plaintiff's physical therapy).

Plaintiff also generally contends that since 2008, continued adjustments to her medications to reduce her pain and to improve her function have been unsuccessful, alluding to the "notes of First Care Clinic staff, High Plain Mental Health Center staff and physical therapists." Plaintiff asserts that the ALJ did not consider "uncontroverted medical evidence," which "supports the veracity of Plaintiff's descriptions of the functional limitations of her impairments." Plaintiff does not attempt to explain how the referenced notes undercut the ALJ's conclusion that plaintiff is not disabled under the Act. Further, the record shows that the ALJ expressly considered the High Plains Mental Health Center notes, *see e.g.*, Tr. 15, 18, 20, 22, and 23 citing Exh. 28F; Tr. 16, 18, 20, 21, 22, and 23 citing Exh. 4F, as well as the First Care Clinic notes, *see e.g.*, Tr. 15, 20, 21, and 22 citing Exhibit 18F.

In short, plaintiff has not shown reversible error in the ALJ's determination that plaintiff is not disabled.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 2nd day of July, 2013, at Topeka, Kansas.

                                                  s/ Sam A. Crow
                                                  Sam A. Crow, U.S. District Senior Judge